IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SCOTT A. DANIELS,
     Petitioner,

vs.                             Case No.:  5:09cv328/RS/EMT

KENNETH S. TUCKER,[1]
     Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 11).  Respondent filed an answer and relevant portions of the state court record (docs. 19, 21, 22, 23, 24, 25, 27).  Petitioner filed a reply (doc. 29).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 19).[2]  Petitioner was charged in the Circuit Court in and for Calhoun County,

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 19, 21, 22, 23, 24, 25, 27).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, with one count of grand theft (Count I) and one count of dealing in stolen property (Count II) (Ex. A at 4).  Following a jury trial on March 20, 2001, he was found guilty as charged (Ex. B, Ex. A at 45).  On May 18, 2001, Petitioner was adjudicated guilty of only the dealing in stolen property count (Ex. C at 30–31).  He was sentenced as a habitual felony offender to fifteen (15) years of imprisonment followed by a fifteen-year term of probation, with presentence credit of 348 days, on that count (Ex. A at 68–69, 87–90, Ex. C).  Petitioner was not adjudicated guilty or sentenced on the grand theft count (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D01-2203 (Exs. D, E, F).  The First DCA affirmed the judgment per curiam without written opinion on May 6, 2002, with the mandate issuing July 2, 2002 (Exs. G, I).  Daniels v. State, 819 So. 2d 754 (Fla. 1st DCA 2002) (Table).  Petitioner did not seek further review.

On June 17, 2003, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O).  Following a limited evidentiary hearing on three of Petitioner's claims (*see* Ex. W), the state circuit court denied the motion (Ex. U).  Petitioner appealed the decision to the First DCA, Case No. 1D07-2730 (Exs. FF, GG, HH).  The First DCA affirmed the decision per curiam without written opinion on July 7, 2009, with the mandate issuing September 9, 2009 (Exs. II, JJ).  Daniels v. State, 14 So. 3d 1006 (Fla. 1st DCA 2009) (Table).

On June 29, 2004, while the Rule 3.850 motion was pending, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D04-2946, alleging ineffective assistance of appellate counsel (Ex. J).  The First DCA denied the petition on the merits on January 10, 2005 (Ex. N).  Daniels v. State, 894 So. 2d 1000 (Fla. 1st DCA 2005).

Petitioner filed the instant federal habeas action on September 28, 2009 (doc. 1).  Respondent concedes the habeas petition is timely (doc. 19 at 3).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf*. <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which

---

judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

"the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  Id. at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS[8]

A.    Ground Nine:  "The last reasoned state court decision is contrary to clearly established law announced in Strickland v. Washington, 466 U.S. 668 (1984) where the state court applied an erroneous rule of law when adjudicating the merits of Petitioner's claims of ineffective assistance of counsel."

---

[8] For organizational purposes, the court is addressing Petitioner's claims in a different order than set forth in his habeas petition.

Petitioner alleges the state circuit court applied an incorrect rule of law to his post-conviction claims of ineffective assistance of counsel, as evidenced by the court's citing Platt v. Wainwright, 208 So. 2d 666 (Fla. 3d DCA 1968) for the proposition that ". . . relief will be granted only when counsel was so incompetent as to render the trial a farce or mockery of justice" (doc. 11 at 34–36). Petitioner contends this standard is more onerous than the clearly established federal standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  He therefore contends he is entitled to de novo review of his federal claims (*id.* at 36).  Petitioner states he requested that his post-conviction counsel argue this issue on appeal of the state circuit court's decision, but counsel failed to do so (*id.* at 34).

Respondent contends to the extent Petitioner is asserting a claim of ineffective assistance of post-conviction counsel, his claim is precluded by § 2254(i) (doc. 19 at 30–31).  Respondent further contends that to the extent Petitioner is arguing that the state court's adjudication of his ineffective assistance of counsel claims was contrary to clearly established federal law, the face of the circuit court's written order refutes his argument.  Respondent argues that although the state court's order once mentions "farce or mockery of justice," it more often speaks in terms of "not ineffective" or "not deficient" or "no prejudice" (*id.* at 31).  Respondent argues it is thus apparent that the state court applied the two-prong Strickland standard, the clearly established federal law applicable to claims of ineffective assistance of counsel, even though the court did not expressly cite Strickland (*id.*).

As previously discussed, a state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13.  Under this prong of § 2254(d)(1), the state court need not cite federal law "so long as neither the reasoning nor the result of the state-court decision contradicts" the Supreme Court's precedents. Early, 537 U.S. at 8.  The difference between the state court's decision and the Supreme Court precedent must be more than slight; the state court decision must be "substantially different." Williams, 529 U.S. at 405.

As the parties concede, the clearly established federal standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under <u>Strickland</u>, a habeas petitioner must show (1) deficient performance by counsel, and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  In the instant case, the record of the post-conviction evidentiary hearing shows that at the conclusion of the evidence, counsel presented legal argument and supplied the court with copies of case law in support of their positions (Ex. W at 98–120; *see* also Ex. S at 865–97).  One of those cases was <u>Kight v. Dugger</u>, 574 So. 2d 1066 (Fla. 1990), in which the Florida Supreme Court reviewed several claims of ineffective assistance of counsel and expressly applied the <u>Strickland</u> standard in doing so (Ex. S at 887–96).  The post-conviction court advised counsel it would review those cases in rendering its decision (Ex. W at 120).

The language quoted by Petitioner appears in the state circuit court's written opinion denying Petitioner's Rule 3.850 motion (Ex. U).  In the court's evaluation of Petitioner's first post-conviction claim (a claim which Petitioner does not raise in the instant federal petition), the state court stated the following:

> In his first allegation, the Defendant asserts that there exists and [sic] irrefutable presumption of ineffective assistance of counsel that is apparent on the face of the record.  More specifically, the Defendant claims that counsel failed to properly object to the testimony of Officer Kimbrel, by raising a hearsay objection, rather than objecting to it as improper bolstering [of] the credibility of the witness, Nellie Mayo.  Defendant's claim is without merit.  Officer Kimbrel's testimony regarding prior statements made by Nellie Mayo were neither hearsay, nor improper bolstering.  In fact, they were simply introduced to show the logical sequence of events as they unfolded in the investigation.  Furthermore, the evidence presented at trial by the State was more than adequate for a conviction despite the omission of this one objection.  More importantly, Officer Kimbrel's testimony as to Nellie Mayo's statements was not the only evidence presented at trial, nor was it the most significant.  It is clear from the record that the case did not hinge solely upon this testimony.  In *Platt v. Wainwright*, 208 So. 2d 666 (Fla. 3d DCA 1968), the court held that "a defendant is not constitutionally entitled to perfect counsel."  Rather the court states ". . . relief will be granted only when counsel was so incompetent as to render the trial a farce or mockery of justice."  Here it is clear from the record that Defendant's trial was neither.

(Ex. U at 1049).  The court went on to address twelve more of Petitioner's claims of ineffective assistance of counsel by determining whether Petitioner showed (1) counsel performed deficiently,

and (2) Petitioner was prejudiced by counsel's alleged error to the extent that the outcome of the proceedings would have been different (Ex. U at 1049–54).

Based upon this record, Petitioner failed to demonstrate that the state court adjudicated his ineffective assistance of counsel claims pursuant to a legal rule that contradicted Strickland. Furthermore, Petitioner has not identified a Supreme Court case with materially indistinguishable facts that arrived at a different result than the state court on any of his ineffective assistance of counsel claims set forth *infra*.  Therefore, Petitioner failed to demonstrate that the state court's adjudication of his ineffective assistance of counsel claims resulted in a decision that was "contrary to" Strickland, for purposes of § 2254(d)(1).  *See* Lockyer, 538 U.S. at 73 (state court adjudication is not "contrary to" clearly established Supreme Court case law unless state court applies rule that contradicts governing law set forth in Supreme Court's cases, or state court confronts set of facts materially indistinguishable from Supreme Court decision and nevertheless arrives at result different from Supreme Court precedent).  The undersigned therefore rejects Petitioner's argument that he is entitled to de novo review of his ineffective assistance of counsel claims under the "contrary to" provision of § 2254(d)(1).

      B.     Ground One:  "The state court decision is an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984) where counsel was ineffective for failing to interview, depose, and call for trial defense witness Tally Cooper to establish Petitioner's innocence."

Petitioner contends defense counsel performed ineffectively by failing to investigate Mr. Tally Cooper as a defense witness (doc. 11 at 7–10).  Petitioner states he asked defense counsel to interview Mr. Cooper, because Cooper would testify that he observed two white males, neither of whom was Petitioner, parked in a white car behind the victim's house on the night a rototiller was stolen from the victim (*id.* at 7).  Petitioner states this testimony also would have proved he had no knowledge of the stolen character of the rototiller (*id.*).  Petitioner asserts defense counsel asked the prosecutor, Petitioner, and Petitioner's mother to locate Mr. Cooper, but counsel should have hired an investigator to locate Cooper (*id.* at 8).  Petitioner contends there is a reasonable probability of a different outcome at trial had the jury heard Cooper's testimony (*id.*).

Respondent contends Petitioner failed to demonstrate he is entitled to federal habeas relief on his claim (doc. 19 at 4–6).

1.        Clearly Established Federal Law

As discussed *supra*, the standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).  "Complaints of uncalled witnesses are not favored, because the

presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[9]

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

       2.     Federal Review of State Court Decision

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Petitioner raised this claim as Ground 13 in his Rule 3.850 motion (Ex. O at 5–15).  The court adjudicated Petitioner's claim as follows:

> In his thirteenth allegation, the Defendant asserts that counsel failed to interview, depose and call for trial available defense witnesses, who would have established Defendant's innocence.  Specifically, the Defendant states that counsel failed to call Tally Cooper as a witness for trial.  Defendant's claims are without merit.  Contrary to the Defendant [sic] claims, counsel made a good faith effort to locate Tally Cooper.  According to Defendant's counsel, he was not from the area so he sought the help of the Defendant and his mother to help locate this individual.  However, counsel stated that neither was helpful and uncooperative [sic] in this search.  Furthermore, counsel stated that he elicited the help of the prosecutor, David House, to determine if he knew where this witness was to locate him.  Based on the testimony presented at the hearing, this Court finds that Defendant was not prejudiced by the actions of his counsel.

(Ex. U at 1053–54).  Petitioner appealed the state circuit court's decision to the First DCA.  The appellate court affirmed per curiam without written opinion.

Petitioner argues state court's adjudication was based upon an unreasonable determination of the facts.  He asserts he submitted to the post-conviction court an affidavit of Mr. Cooper, obtained August of 2002, in which Cooper attested he observed two white males in a car parked near the victim's home on the night the rototiller was stolen, and Petitioner was not one of the men (doc. 11 at 8).  Petitioner argues the state post-conviction court unreasonably found that defense counsel made a good faith effort to locate Mr. Cooper, because evidence adduced at the post-conviction hearing established counsel's effort was half-hearted (*id.* at 9).  Petitioner asserts pre-trial depositions revealed (1) a witness saw a white car occupied by two white males parked behind the victim's residence the night the tiller was taken, (2) the witness lived across the street from the victim, and (3) the witness's name was Tally Cooper (doc. 29 at 2–3).  Petitioner further argues the post-conviction court found Mr. Cooper's testimony was unreliable; however, the court never observed his demeanor, posture, gait, eye contact, or any other indicia of reliability and instead based its determination upon Mr. Cooper's affidavit (doc. 11 at 9; doc 29 at 4–10).  Petitioner also argues the state court found that Petitioner and his mother were uncooperative in the search for Mr. Cooper, but this fact could not be inferred from counsel's testimony at the post-conviction evidentiary hearing (doc. 11 at 9).

At the post-conviction evidentiary hearing, Attorney Jonathan Dingus testified he was appointed to represent Petitioner in November of 2000 (Ex. W at 64).  Dingus testified he was discharged from the case on January 17, 2001, and maintained only as stand-by counsel, when the court granted Petitioner's motion to discharge counsel and represent himself (*id.* at 68–69; *see also* Ex. S at 965–86).  Dingus testified he was then reappointed just a day or two before Petitioner's first trial on January 29, 2001 (*see* Ex. W at 22–23, 69–70; *see also* Ex. U at 1069).  That trial resulted in a mistrial, and trial was set for the next day (Ex. W. at 69–70; Ex. U at 1069–71).  That trial also resulted in a mistrial (Ex. W at 69–70; Ex. U at 1072–75).  Petitioner's third and final trial was held March 20, 2001 (Ex. B).

At the evidentiary hearing, Attorney Dingus testified Petitioner told him about some witnesses he wanted him to interview (Ex. W at 67, 83).  Attorney Dingus testified he asked both Petitioner and Petitioner's mother for telephone numbers and addresses of the witnesses, so they could be disclosed to the State and subpoenaed for deposition and trial (*id.* at 67, 83, 96–98).  Attorney Dingus testified Petitioner did not know how to locate the witnesses, so Dingus asked the prosecutor if he knew who any of the people were and where they were, but the prosecutor did not know (*id.* at 83–84, 96–98).  Attorney Dingus testified he asked Officer Glen Kimbrel, the case agent, if he knew where any of the potential witnesses were, but Kimbrel was not able to find them (*id.* at 84).  Dingus testified he tried to enlist the assistance of Petitioner's mother in locating some of the potential witnesses, but she was not able to find them (*id.* at 84, 86, 97–98).  Attorney Dingus testified he made a good faith effort to try to locate the potential witnesses, including Tally Cooper (*id.* at 86).

At the evidentiary hearing, Petitioner presented testimony from Mr. John Davis, a private investigator (Ex. W at 47).  He testified he was contacted by Petitioner's mother in August of 2002 to locate Tally Cooper (*id.* at 48–49).  Mr. Davis testified Petitioner's mother provided him a prepared affidavit for Mr. Cooper's signature (*id.* at 48).  Davis testified he located Mr. Cooper the same day, or a few days later, and discussed the affidavit with him in detail (*id.* at 48–49).  He testified Mr. Cooper made a couple of changes to the affidavit and then signed it (*id.* at 49–51).  Mr. Davis conceded that Mr. Cooper's affidavit did not mention a time of day when he saw the two men in the white car on June 4, 2000 (*id.* at 55).

Petitioner testified regarding this issue at the evidentiary hearing:

Q [by the State].        . . . during the time that you represented yourself and you were aware that there was another witness out there, did, at any time, you talk to your mom and ask her to get this investigator, can you or somebody go by and find this find [sic] guy, did you do that?

A.      I believe I did.

Q.      Were they able to find him?

A.      I don't believe they actually tried.

Q.      You're saying that your mother and your friends didn't try to do that?

A.      I'm not real clear on that, there's been a lot of water under the bridge, but I can't say for sure if they tried or not, but I believe I did ask.

Q.      They thought enough of you after the trial to try it, right?

A.      If you look back at the situations that I was in and a lot of people wanted to see me sober up and perhaps some people were thinking it might not be a bad idea to sober up, maybe by a couple of few years forcibly in jail, but the shock of the actual sentence, I think brought them around.

(Ex. W at 43–44).

Upon review of the evidence presented at the evidentiary hearing, the undersigned concludes Petitioner failed to demonstrate by clear and convincing evidence that the state court's factual findings, that Attorney Dingus made a good faith effort to locate Tally Cooper, and neither Petitioner nor his mother was helpful and cooperative in this search, were unreasonable.  Therefore, Petitioner has not satisfied § 2254(d)(2).

Additionally, Petitioner failed to show the state court's adjudication was an unreasonable application of Strickland.  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   See Gill,  633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The state court record demonstrates the following evidence was adduced at trial.  Ralph Lee testified that in June of 2000, he owned a Yard Pro rototiller, model number YRT55, serial number N-049125 QY1NCSH0080, valued at approximately $700.00 (Ex. B at 15–24).  He testified he kept it under his garage, but he did not keep it locked up (*id.* at 18).  Mr. Lee testified the rototiller went missing in June of 2000 and was returned to him by Officer Glenn Kimbrel (*id.* at 18–20, 71).

Erica McKinney testified she was at a friend's house on June 4, 2000, and two white men arrived, one of whom identified himself as Scott Daniels (Ex. B at 25–26).  She testified the man who identified himself as Scott Daniels asked her if she would give him a ride to his boss's house to pick up a tool (*id.*).  Ms. McKinney testified she drove the man to a house near the courthouse and dropped him off, and he told her to circle the block (*id.* at 27–28).  She circled the block twice and saw the man standing on the side of the road waving to her (*id.* at 28).  Ms. McKinney pulled up and parked, and the man told her to open her trunk (*id.*).  She opened the trunk and saw the man pulling a large tool out of the bushes (*id.*).  The man asked her to help him, so she helped him put the tool in the trunk (*id.*).  Ms. McKinney testified the man told her to "hurry up," and the thought came to her that "this is not right," so she jumped in the car, put it in reverse and pushed the gas so the tool fell out of the trunk, and drove off (*id.* at 28–29).  She testified she subsequently took a law enforcement officer to the house from which the tool was taken (*id.* at 27).  On cross-examination, Ms. McKinney admitted she did not remember the man's name until law enforcement mentioned it to her (*id.* at 30–31).  She testified the man had long hair and a tan "darker than he is now" (*id.* at 30).  She also admitted she had been convicted of three crimes of dishonesty or false statement (*id.* at 31–32).

Ms. Nellie Mayo testified she knew Scott Daniels, and she identified him in court (Ex. B at 32–33).  She testified that in June of 2000, Petitioner came to the house where she lived with John

Marks (*id.* at 33).  Ms. Mayo testified Petitioner arrived at approximately midnight and asked Johnny (Marks) to give him a ride, because his tiller fell out of a girl's car (*id.* at 33–34, 38). Petitioner said the girl would not put the tiller back in the car, because she was afraid it would "tear it up," so he put the tiller in the weeds beside the road (*id.* at 34).  Ms. Mayo testified Johnny volunteered her to assist Petitioner, so she borrowed an older, dark blue car from her friend, and the three of them (Ms. Mayo, her friend, and Petitioner) drove to the location of the tiller, as directed by Petitioner, which was an area of tall grass on a street behind the courthouse (*id.* at 34–36, 38). Ms. Mayo testified she and her friend assisted Petitioner in putting the tiller in the car, and then drove to a man's house who Petitioner knew (*id.* at 35).  She testified she walked to the front door with Petitioner, Petitioner knocked on the door, and a man answered it (*id.*).  Petitioner told the man he wanted to sell the tiller for $100.00 (*id.*).  Ms. Mayo testified she went back to the car, and as she was sitting in the car, Petitioner yelled to her and asked how she wanted the check made out (*id.* at 35–36).  She testified she responded it did not matter to her, because she had nothing to do with it (*id.*).  She testified Petitioner then unloaded the tiller and received a check for $100.00 (*id.* at 36). She testified she did not receive any money from the tiller (*id.* at 37).  Ms. Mayo testified she had never spoken to Petitioner's mother nor been to his mother's house (*id.*).  She testified she took Officer Glenn Kimbrel to the location where they picked up the tiller (*id.* at 53–54).  On cross-examination, Ms. Mayo admitted she had been convicted of 41 counts of worthless checks (*id.* at 38–39).  She also admitted she smoked crack cocaine with Petitioner during the month of June of 2000, but she later clarified it was not on the night Petitioner sold the tiller (*id.* at 44, 54).  She testified that on the night Petitioner sold the tiller, Petitioner had short hair and a tan, but not a dark tan (*id.* at 45–46).  Ms. Mayo testified she never spoke to the man who bought the tiller (*id.* at 52).

Johnny Marks testified he was living with Nellie May in June of 2000 (Ex. B at 54–55).  He testified that on or about June 5, 2000, Petitioner came to the house where he and Nellie were staying, knocked on the door, and told Marks he needed help loading a tiller (*id.* at 56).  Mr. Marks testified Nellie left with Scott (*id.*).

Mr. Dick Bozeman testified Scott Daniels was his second cousin, and he identified Petitioner as his second cousin (Ex. B at 60–61).  He testified that late one night in June of 2000, between 10:00 p.m. and 1:00 a.m., Petitioner came to his house (*id.* at 61).  He testified Petitioner arrived in

a car driven by a woman (*id.* at 61).  He testified Petitioner came into the house, and Petitioner told him the woman had a tiller she wanted to sell (*id.* at 62).  Bozeman testified he and Petitioner went onto the porch, and he saw the tiller in the trunk of the car (*id.*).  He testified Petitioner called out to the woman, who was in the car at the time, and asked if she would take $100.00 dollars, but Bozeman could not hear the woman's response (*id.* at 62–63, 65).  He testified he and Petitioner went back into the house, and he gave Petitioner a $20.00 in cash and a check for $80.00 made payable to "cash" (*id.* at 63).  He testified Petitioner, the woman, and a third person that was with Petitioner and the woman moved the tiller to the porch (*id.*).  Mr. Bozeman testified he stopped payment on the check after Officer Kimbrel spoke to him (*id.*).  He stated the tiller was loaded onto a city truck and taken away (*id.*).  Mr. Bozeman testified that at one time, Petitioner wore his hair clipped on the side but with a small ponytail, but he did not see whether Petitioner had a ponytail on the night he sold the tiller (*id.* at 66–67).

Officer Glenn Kimbrel testified he investigated Ralph Lee's report of a stolen tiller (Ex. B at 72).  He testified he found a tiller with a matching serial number at Dick Bozeman's house (*id.*).  He testified that during his investigation he interviewed Erica McKinney, and she took him to the location where she dropped off Scott Daniels, which was in front of Ralph Lee's house (*id.* at 73–75).  He testified he also interviewed Nellie Mayo (*id.* at 75).  On cross-examination, Officer Kimbrel admitted that Erica McKinney did not indicate she knew the name "Scott Daniels" until he mentioned it to her, with several other names (*id.* at 73–74, 76–77, 80).

The defense called Jean Murphy, Petitioner's mother (Ex. B at 85, 89).  She testified that one evening, an older, dark colored car drove up to her house, and a lady got out and walked toward the house (*id.* at 91).  Ms. Murphy testified Scott walked out of the house and talked with the woman (*id.*).  She testified Scott then yelled out of the car window that he was going to run to Dick's with Nellie (*id.* at 92).

In assessing <u>Strickland</u> prejudice, the proffered testimony of Tally Cooper must be considered in the context of the afore-described trial evidence to determine whether there is a reasonable probability the outcome of trial would have been different if Tally Cooper had testified.  Mr. Cooper's affidavit states he saw two white males on a white car parked near the home of Ralph Lee on June 4, 2000 (Ex. U at 1241).  His affidavit states one of the men had short hair and a dark

tan (*id.*).  Mr. Cooper states Petitioner was not either of the men in the car (*id.*).  He further states he did not see Petitioner at all that night (*id.*).

In light of the strength of the evidence adduced at trial and absence of any specifics as to the time Mr Cooper saw the men in or on a car near the victim's house, Petitioner failed to establish a reasonable probability the jury would have acquitted him if Mr. Cooper had testified.  Therefore, Petitioner failed to demonstrate that the state court's adjudication of his claim was an unreasonable application of <u>Strickland</u>.

C.     <u>Ground Two:  "The state court decision was an unreasonable application of Strickland v. Washington, 355 U.S. 668 (1984) where counsel failed to demand production of the commercial instrument utilized in the dealing in stolen property transaction, which instrument would have exonerated Petitioner."</u>

Petitioner contends defense counsel was ineffective for failing to demand production of the check written by Dick Bozeman for $80.00 made payable to "cash" as partial payment for the tiller (doc. 11 at 11–13).  Petitioner states if counsel had done so, he would have discovered the check was cashed by Nellie Mayo (*id.* at 12).  He argues counsel's failure to obtain the check and introduce it as evidence at trial prejudiced him, because it would have created reasonable doubt as to the mens rea and "Actus Reus" of the dealing in stolen property charge (*id.* at 12–13).  Petitioner  asserts he raised this claim as Ground Nine in his Rule 3.850 motion (*id.* at 11).

Respondent asserts Petitioner procedurally defaulted this claim, because he waived appellate review by failing to argue it in his initial brief on appeal of the denial of his Rule 3.850 motion (doc. 19 at 7–11).  Respondent states as part of Petitioner's Ground Nine in his Rule 3.850 motion, he claimed that defense counsel was ineffective for failing to demand production of Mr. Bozeman's check and introduce it as evidence at trial (*id.*).  However, in Petitioner's brief on appeal of the state circuit court's denial of his Rule 3.850 motion, Petitioner did not argue error with respect to lower court's denial of this part of Ground Nine (*id.*).  Therefore, Petitioner waived appellate review of the claim, and it is thus procedurally barred from federal review (*id.*).

In Petitioner's reply, he contends the claim is not procedurally barred, because Florida law does not require briefing of summarily denied claims (doc. 29 at 10–11).  He also argues the principle of judicial estoppel prevents Respondent from arguing that briefing was required on the

summarily denied claims, because the State argued in its answer brief on post-conviction appeal that briefing was not required on summarily denied issues (*id.*).

Respondent's procedural default argument is supported by the record and state and federal law.  Petitioner raised the instant claim as part of Ground Nine in his Rule 3.850 motion (Ex. Q at 517–26).  Also in Ground Nine, Petitioner claimed that defense counsel was ineffective for (1) failing to object or move for a judgment of acquittal due to the State's failure to present physical evidence of the rototiller, and (2) failing to introduce a picture of the rototiller during counsel's direct examination of Petitioner's mother and cross-examination of Mr. Bozeman (*id.* at 507–17).  The state circuit court held an evidentiary hearing on three of Petitioner's thirteen post-conviction claims (not the instant claim) and subsequently denied relief on all of them (Ex. U at 1049–54; Ex. W).  The state circuit court disposed of the instant claim as follows:

> In his ninth allegation, Defendant asserts that counsel's performance at trial was constitutionally deficient when counsel failed to demand that the State produce the physical evidence of the corpus delecti thereby prejudicing the Defendant. Defendant's claim is without merit.  At trial, three different witnesses testified that, according to the serial number, the tiller that was stolen was the same one that was sold and recovered by law enforcement.  Since Defendant was convicted of dealing in stolen property, the value of the tiller was not an issue.  As for the check made out to cash and given for payment of the tiller, payment was stopped on the check so it was of no evidentiary value.  This Court finds that the Defendant has failed to show he was prejudiced to the extent that the outcome of the proceedings would have been different.  Therefore, Defendant is due no relief as to this claim.

(Ex. Y at 1052).

In Petitioner's brief on appeal of the decision, Petitioner's counsel argued only the issue of counsel's failure to (1) object or move for judgment of acquittal due to the State's failure to present physical evidence of the item allegedly stolen (the tiller), and (2) introduce pictures of the tiller during the defense's case in chief (Ex. FF at 43–46).  Petitioner's counsel made no argument as to counsel's failure to request production of the check and use it at trial.  The State asserted in its answer brief that the Florida appellate rules did not require briefing on summarily denied claims; therefore, it declined to formally address each of Petitioner's summarily denied claims unless the appellate court directed it to do so (which it did not) (Ex. GG at 26).  The State went on to argue that the lower court's comprehensive order provided a specific basis for denying each claim, and

therefore, satisfied the Florida Supreme Court's requisite for denying each without an evidentiary hearing (*id.* at 26–27). The First DCA affirmed the lower court's decision without written opinion.

The Florida Rules of Appellate procedure provide that in a case where a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of his motion must file an initial brief. *See* Fla. R. App. P. 9.141(b)(3); *see also* Pennington v. State, 34 So. 3d 151, 152 n.1 (Fla. 1st DCA 2010) (briefing is required in appeal from non-summary denial of Rule 3.850 motion). It is well established in Florida courts that claims for which an appellant has not presented any argument, or for which he provides only conclusory argument, are insufficiently presented for appellate review and are waived. *See* Gamble v. State, 877 So. 2d 706 (Fla. 2004); Reed v. State, 875 So. 2d 415 (Fla. 2004); Cooper v. State, 856 So. 2d 969, 977 n.7 (Fla. 2003); Marshall v. State, 854 So. 2d 1235, 1252 (Fla. 2003) Sweet v. State, 810 So. 2d 854, 870 (Fla. 2002); Johnson v. State, 769 So. 2d 990, 1005–06 (Fla. 2000); Shere v. State, 742 So. 2d 215, 217 n.6 (Fla. 1999); Duest v. Dugger, 555 So. 2d 849, 852 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."). Florida courts consistently apply this rule, even in cases where a post-conviction evidentiary hearing is limited in scope to some but not all post-conviction claims; thus, a movant wishing to preserve any claims for appellate review, whether summarily denied or not, must present argument on those issues in his initial brief.[10]  *See* Alcorn v. State, — So. 3d —, 2011 WL 2200625, at *1 (Fla. 4th DCA June 8, 2011) (where trial court disposed of four of five claims without evidentiary hearing and held evidentiary hearing on one claim, appellant's failure to argue one of his summarily denied claims in his initial brief constituted abandonment of claim); Prince v. State, 40 So. 3d 11 (Fla. 4th DCA 2010); Hammond v. State, 34 So. 3d 58 (Fla. 4th DCA 2010) (claim for which appellant did not present argument, or for which he provided only conclusory argument, was insufficiently presented for appellate review, regardless of whether claim was among those claims litigated at evidentiary hearing or among those claims summarily denied

_____

[10] Even if the Florida appellate courts were not absolutely consistent in applying this rule, such is not required to permit a federal court to conclude that a state procedural rule is adequate for federal habeas purposes.  *See* Maples v. Allen, 586 F.3d 879, 888 (11th Cir. 2009) (while "regularly followed" means "closely hewn to," it does not mean complete unanimity or absolute consistency of state decisions applying the rule) (citations omitted).

by trial court); Williams v. State, 24 So. 3d 1252 (Fla. 1st DCA 2009) (where appellant received evidentiary hearing on some of his post-conviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in appellate brief); *see also* Ward v. State, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc) (where all of appellant's post-conviction claims were summarily denied, but appellant chose to file initial brief on appeal (even though not required to do so under Fla R. App. P. 9.141(b)(2)), appellant abandoned any issues not addressed in initial brief); Watson v. State, 975 So. 2d 572 (Fla. 1st DCA 2008) (same); Austin v. State, 968 So. 2d 1049 (Fla. 5th DCA 2007) (same)).

The undersigned concludes that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his initial brief, even when the post-conviction evidentiary hearing was limited in scope to some but not all post-conviction claims and the appellant's insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas.  *See, e.g.*, Stoudmire v. Tucker, No. 3:09cv48/MCR/EMT, 2011 WL 5426239, at *9–11 (N.D. Fla. Aug. 30, 2011), *Report and Recommendation adopted*, 2011 WL 5442091 (N.D. Fla. Nov. 9, 2011) (unpublished); Green v. McNeil, No. 1:09cv204/MMP/GRJ, 2011 WL 2790167, at *7 (N.D. Fla. June 22, 2011) (unpublished), *Report and Recommendation adopted*, 2011 WL 2790180 (N.D. Fla. July 15, 2011); Curry v. Buss, No. 3:08cv539/LAC/EMT, 2011 WL 2174038 (N.D. Fla. Apr. 26, 2011) (unpublished), *Report and Recommendation adopted*, 2011 WL 2149544 (N.D. Fla. June 1, 2011); Rasley  v. Buss, No. 5:08cv368/RH/EMT, 2011 WL 2358650  (N.D. Fla. Apr. 11, 2011) (unpublished), *Report and Recommendation adopted*, 2011 WL 2293383 (N.D. Fla. June 9, 2011); Corn  v. McNeil, No. 3:08cv199/MCR/EMT, 2010 WL 5811343 (N.D. Fla. Nov. 24, 2010) (unpublished), *Report and Recommendation adopted*, 2011 WL 88713 (N.D. Fla. Feb. 10, 2011); Ross v. McNeil, 5:07cv219/RS/EMT, 2010 WL 2179039 (N.D. Fla. Apr. 14, 2010) (unpublished), *Report and Recommendation adopted*, 2010 WL 2179037 (N.D. Fla. May 28, 2010) (unpublished), *cert. of appealability denied*, No. 10-13013-A (11th Cir. Oct. 4, 2010) (certificate of appealability sought on issue of whether Florida's procedural rule, that defendant waived or abandoned appellate review of post-conviction claims that were summarily denied and not addressed in defendant's appellate brief, where trial court held evidentiary hearing on other claims, was firmly established

and regularly followed); <u>Sharp v. McNeil</u>, No. 4:07cv17/MP/MD, 2009 WL 981594, at **13–14 (N.D. Fla. Apr. 10, 2009) (unpublished); <u>Durain v. McNeil</u>, No. 2:08cv24-FTM-29DNF, 2008 WL 4888989, at *9 (M.D. Fla. Nov. 12, 2008) (unpublished); <u>Williams v. McDonough</u>, No. 8:02cv965-T-30MAP, 2007 WL 2330794, at **1–2 (M.D. Fla. Aug. 14, 2007) (unpublished); <u>Walker v. Sec'y, Dep't of Corr.</u>, No. 8:05-cv-1539-T-17MAP, 2007 WL 1747181, at *4 (M.D. Fla. June 18, 2007) (unpublished).[11]

Additionally, the undersigned rejects Petitioner's judicial estoppel argument.  The doctrine of judicial estoppel is a discretionary remedy courts may invoke "to prevent the perversion of the judicial process."  <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).  "Judicial estoppel is applied to the calculated assertion of divergent sworn positions.  The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." <u>Burnes v. Pemso Aeroplex, Inc.</u>, 291 F.3d 1282, 1285 (11th Cir. 2002).  "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  <u>Davis v. Wakelee</u>, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895)).  "When considering a party's intent for the purpose of judicial estoppel, we require 'intentional contradictions, not simple error or inadvertence.'"  <u>Robinson v. Tyson Foods, Inc.</u>, 595 F.3d 1269, 1275 (11th Cir. 2010) (quoting <u>Am. Nat'l Bank of Jacksonville v. FDIC</u>, 710 F.2d 1528, 1536 (11th Cir. 1983)).

In the instant case, Petitioner does not allege facts suggesting that Respondent's waiver and procedural default argument in the instant federal proceeding was an intentional contradiction of the State's argument in its answer brief in the post-conviction appeal (that is, that the Florida appellate rules did not require briefing on summarily denied claims).  Further, the State never represented in the post-conviction appeal that it would <u>not</u> assert a waiver/procedural default defense if and when the case got to federal court.  Moreover, Petitioner failed to establish he detrimentally relied on the State's statement in its answer brief.  <i>See</i> <u>Lyng v. Payne</u>, 476 U.S. 926, 935, 106 S. Ct. 2333, 2339,

---

[11] The undersigned cites <u>Stoudmire</u>, <u>Green</u>, <u>Curry</u>, <u>Rasley</u>, <u>Corn</u>, <u>Ross</u>, <u>Sharp</u>, <u>Durain</u>, <u>Williams</u>, and <u>Walker</u> only as persuasive authority and recognizes that the opinions are not considered binding precedent.

90 L. Ed. 2d 921 (1986) ("An essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations. . . ."). Further, the outcome of the post-conviction appeal would not have been different had the State briefed the summarily denied claims. Therefore, Respondent is not judicially estopped from asserting the waiver and procedural default defenses in the instant proceeding.

For the foregoing reasons, the undersigned concludes that Ground Two was not properly exhausted in the state courts, because Petitioner waived post-conviction appellate review of the claim. Additionally, Petitioner has no available avenue through which he may properly exhaust his claim in the state courts. Therefore, the claim is considered procedurally defaulted. Moreover, Petitioner has failed to show cause for his failure to properly exhaust this claim; and he has not shown he is entitled to review under any other recognized exception to the procedural bar.[12] Therefore, he is not entitled to federal review of Ground Two.[13]

D.   Ground Three:  "The state court decision was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), where defense counsel failed to raise a double jeopardy defense under § 812.025, Fla. Stat."

Petitioner contends defense counsel was ineffective for failing to request a jury instruction consistent with Florida Statutes § 812.025, which provides:

Notwithstanding any other provision of law, a single indictment or information may, under proper circumstances, charge theft and dealing in stolen property in connection with one scheme or course of conduct in separate counts that

---

[12] To the extent Petitioner asserts ineffective assistance of post-conviction appellate counsel as cause for the procedural default, the Supreme Court held ineffective assistance of counsel cannot constitute cause of a procedural default in a state post-conviction proceeding.  See Coleman v. Thompson, 501 U.S. 722, 752–53, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Additionally, to the extent Petitioner's references to his "factual innocence," sprinkled throughout his pleadings, constitute an argument that he is entitled to federal review of any procedurally defaulted claim through the "fundamental miscarriage of justice" portal, he has failed to satisfy that standard. Even if the court considered the affidavit of Tally Cooper as Petitioner's "new evidence," Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him had they known of this evidence.

[13] Notwithstanding the procedural default, Petitioner is not entitled to federal habeas relief. Mr. Dick Bozeman, the person who bought the tiller, testified he stopped payment on the check (Ex. B at 63). If Ms. Mayo had cashed the check, Mr. Bozeman could not have stopped payment on it. Therefore, Petitioner's assertion that Nellie Mayo cashed the check and endorsed it in the process is completely unsupported and thus insufficient to show that defense counsel was ineffective for failing to demand production of the check and introduce it as evidence at trial. Therefore, Petitioner failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.

> may be consolidated for trial, but the trier of fact may return a guilty verdict on one
> or the other, but not both, of the counts.

Fla. Stat. § 812.025 (doc. 11 at 14).  Petitioner contends counsel's failure to request an instruction

that the jury may return a guilty verdict on either dealing in stolen property or grand theft, but not

both, was deficient (*id.*).  He contends if counsel had requested an instruction, there is a reasonable

probability the jury would have convicted him of only grand theft (*id.* at 14–15).  Petitioner

acknowledges the trial court sentenced him on only the dealing in stolen property count (*id.*).

Petitioner states he raised this claim as Ground Seven in his Rule 3.850 motion (*id.* at 13).

Respondent concedes Petitioner raised this claim as Ground Seven in his post-conviction

motion (doc. 19 at 11–13).  Respondent argues Petitioner did not properly exhaust the claim,

because he failed to fairly present a federal ineffectiveness claim in his post-conviction appeal.

Respondent additionally contends, notwithstanding the exhaustion issue, Petitioner failed to

demonstrate he was prejudiced by counsel's failure to request the instruction, because he was

adjudicated guilty and sentenced only for dealing in stolen property (*id.* at 13).

Upon review of Petitioner's post-conviction record, the undersigned concludes Petitioner

properly exhausted his federal claim of ineffective assistance of counsel (*see* Ex. Q at 395–412; Ex.

FF at 25–28).  Therefore, the court will review whether Petitioner is entitled to federal habeas relief

under the AEDPA.

        1.     Clearly Established Federal Law

The clearly established standard for evaluating claims of ineffective assistance of counsel

is the Strickland standard set forth *supra*.

        2.     Federal Review of State Court Decision

The state circuit court adjudicated the claim as follows:

> As for Defendant's claim regarding Florida Statute 812.025, he has
> demonstrated no prejudice on the part of counsel that would change the outcome of
> his sentence.  On March 20, 2001, the jury found the Defendant guilty of count I,
> grand theft and count II, dealing in stolen property.  At sentencing on May 18, 2001,
> this Court properly vacated his sentence as to count I and sentenced the Defendant
> as to Count II only.  After considering all the evidence presented, this Court finds
> that the Defendant's sentenced [sic] was proper based on the case law at the time of
> the trial.  *See Alexander v. State*, 470 So. 2d 856 (Fla. 1st DCA 1985); *Ridley v.
> State*, 407 So. 2d 1000 (Fla. 5th DCA 1981).  Therefore, this Court finds that counsel

was not ineffective for [not] requesting this jury instruction and Defendant has
suffered no prejudice.

(Ex. U at 1052).  The appellate court affirmed per curiam without written opinion.

As previously discussed, when faced with a state appellate court's summary affirmance of
a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate
conclusion, not the reasoning that led to it.  *See* Gill,  633 F.3d at 1287 (citing Harrington, 131 S.
Ct. at 786).  The federal court must determine what arguments or theories supported or could have
supported the state court's decision, and then ask whether it is possible that fairminded jurists could
disagree that those arguments or theories are inconsistent with the holding in a prior decision of the
Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the
federal district court may rely on grounds other than those articulated by the state court in
determining that habeas relief was not warranted, so long as the district court did not err in
concluding that the state court's rejection of the petitioner's claims was neither an unreasonable
application of a Supreme Court holding nor an unreasonable determination of the facts).

Petitioner's defense counsel, Mr Dingus, testified at the evidentiary hearing that he
researched section 812.025 (Ex. W at 76–78, 92–93).  He testified that according to case law from
the First DCA (the controlling appellate court), the procedure to be followed to effectuate the intent
of the statute was to allow the jury to return a verdict on both charges, but the court could adjudicate
guilt and sentence the defendant on only one count, which is what occurred in Petitioner's case
(*id.*).[14]

Petitioner failed to demonstrate that the state court unreasonably applied Strickland.  Even
if defense counsel performed deficiently by failing to request a jury instruction providing that the
jury may find Petitioner guilty of grand theft or dealing in stolen property but not both, Petitioner

---

[14] In Alexander v. State, the case cited by the state circuit court, the First DCA held that failure to instruct the
jury that the defendant could only be convicted of either grand theft or trafficking in stolen property, but not both, did
not require a new trial but could be properly cured by vacating the theft conviction.  470 So. 2d 856, 857 (Fla. 1st DCA
1985); *see also* Schummer v. State, 657 So. 2d 3 (Fla. 1st DCA 1995).  Although the propriety of this procedure is in
debate in the Florida district courts of appeal, the Fist DCA recently maintained its adherence to Alexander.  *See*
Blackmon v. State, 58 So. 3d 343, 346–48 (Fla. 1st DCA 2011).  The Florida Supreme Court accepted jurisdiction to
review the conflict in the circuit courts.  *See* Blackmon v. State, No. SC11-903, 67 So. 3d 198, 2011 WL 3863054 (Fla.
Aug. 16, 2011) (Table).

failed to show a reasonable probability of a different outcome at trial had the instruction been given. The jury found beyond a reasonable doubt that Petitioner trafficked in stolen property, as evidenced by the guilty verdict as to that count after only twenty (20) minutes of deliberation (*see* Ex. A at 46–49). Further, Petitioner was adjudicated guilty and sentenced on only the trafficking count. Petitioner offered no factual support for his assertion that the jury would have convicted him of only the grand theft count had they been instructed in accordance with Fla. Stat. § 812.025. Therefore, Petitioner failed to demonstrate he is entitled to federal habeas relief on this claim.

> E.     Ground Four:  "The state court decision was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), where counsel failed to develop and present a coherent theory of defense as to Petitioner's factual innocence."

Petitioner asserts defense counsel was or should have been aware that Nellie Mayo's boyfriend, Johnny Marks, was the actual perpetrator of the tiller theft (doc. 11 at 15–19). Petitioner states Erica McKinney described the man she drove to pick up the tiller as approximately 5' 8" tall with a dark tan and long hair, which matched Johnny Marks's physical description, not Petitioner's (*id.*). Petitioner argues defense counsel should have elicited testimony from Ms. McKinney regarding the physical description of the thief (*id.*). He also argues counsel should have elicited testimony regarding Nellie Mayo's "love affair" with Johnny Marks, to show that Ms. Mayo had a motive to "cover up" Mr. Marks' involvement in the theft (*id.*). Petitioner states he raised this claim as Ground Five in his Rule 3.850 motion (*id.* at 15).

Respondent contends Petitioner procedurally defaulted this claim (doc. 19 at 14–17). Respondent argues Petitioner failed to advance a federal constitutional claim in his post-conviction appeal and instead argued only that the lower court erred by failing to hold an evidentiary hearing on the claim (*id.*). Respondent therefore contends the claim was not exhausted for purposes of federal habeas (*id.*). Respondent additionally argues that notwithstanding the exhaustion defense, Petitioner failed to satisfy the § 2254(d) standard for federal habeas relief (*id.* at 17–18).

In Petitioner's post-conviction appeal, he asserted purely a state procedural issue. He argued the lower court erred by summarily denying his ineffective assistance of counsel claim asserted as Ground Five in his post-conviction motion (*see* Ex. P at 224–36). He argued the claim was facially valid, but the lower court failed to address one specific aspect of the claim, and neither the lower

court's reasoning nor the attachments to the lower court's order conclusively refuted the entirety of Petitioner's claim (Ex. FF at 39–43).  Petitioner argued the lower court was required to hold an evidentiary hearing on the claim, pursuant to Rule 9.141(b)(2)(D) of the Florida Rules of Appellate Procedure (*id.* at 41–43).  As relief, he requested an evidentiary hearing on the claim (*id.* at 43).  The State argued that summary denial of the claim was proper under Florida law (Ex. GG at 26–27).  The First DCA affirmed the lower court's decision.

Based upon this record, the undersigned concludes Petitioner did not fairly present a federal claim to the post-conviction appellate court; instead, he presented only a state procedural challenge to the lower court's denial of his claim.  Therefore, Petitioner failed to fully exhaust the merits of his federal claim in the state courts.

Notwithstanding Petitioner's failure to exhaust, he is not entitled to relief under the AEDPA. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  In the state circuit court's order denying the claim, the court made the following factual findings:  (1) the theory of defense at trial was that Petitioner did not commit the alleged crimes; (2) throughout the trial, by way of cross-examination and direct examination, defense counsel stressed that no one could identify Petitioner as the person who stole the tiller; (3) counsel also brought out through cross-examination and direct examination that Petitioner was helping someone else sell the tiller; (4) defense counsel very clearly brought out to the jury that no one had ever identified Petitioner, either in court or out of court; (5) counsel did not concede Petitioner's guilt, instead counsel stressed that Petitioner was innocent, but if the jury chose to believe he committed a crime, there was no evidence he was guilty of grand theft, since the value of the tiller was less than $300.00; and (6) defense counsel never told the jury they should find Petitioner guilty (Ex. U at 1050–51).  The court concluded defense counsel was not deficient in presenting a viable defense theory of Petitioner's innocence (*id.* at 1051).

The state court's findings are well supported by the trial transcript (Ex. B).  Throughout trial, defense counsel consistently maintained that Petitioner was not the person who stole the tiller and was merely assisting Nellie Mayo in selling it.  During counsel's examination of witnesses, he highlighted discrepancies between Erica McKinney's description of the man she assisted in picking

up the tiller, and Nellie Mayo and Dick Bozeman's descriptions of Petitioner.  Additionally, the jury heard evidence that Nellie Mayo and Johnny Marks lived together, and were thus able to consider this fact in assessing their credibility.  The jury was also able to observe Johnny Marks's physical appearance.  Therefore, Petitioner failed to show that the state court's adjudication was based upon an unreasonable determination of the facts.  He also failed to demonstrate that the state court's conclusion as to the performance prong of the <u>Strickland</u> standard was unreasonable.  Moreover, Petitioner failed to show a reasonable probability of a different outcome at trial if counsel had specifically focused on pointing the finger at Johnny Marks as the perpetrator.  Therefore, Petitioner is not entitled to habeas relief on this claim.

> F.    <u>Ground Five:  "The state court decision is an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), where counsel failed to move to exclude the testimony of Ms. Erika [sic] McKinney, who was incompetent to testify due to her inability to recollect the events of which she was called to testify to [sic]."</u>

Petitioner argues defense counsel should have argued that Ms. McKinney was incompetent to testify, because she had no personal knowledge of whether Petitioner was the man she drove to Ralph Lee's residence (doc. 11 at 20–22).  Petitioner states Ms. McKinney admitted in her deposition that she would not recognize the man she transported to Mr. Lee's house; and she also admitted she would not have known the name "Scott Daniels" had the police department not suggested it to her (*id.*).  Petitioner contends this provided a basis for counsel to challenge her competency to testify as a witness (*id.*).  Petitioner states he raised this claim as Ground Two in this Rule 3.850 motion (*id.* at 20).

Respondent contends Petitioner procedurally defaulted this claim, because he waived appellate review by failing to argue it in his initial brief on appeal of his Rule 3.850 motion (doc. 19 at 18–20).  Respondent states as part of Petitioner's Ground Two in his Rule 3.850 motion, he claimed that defense counsel was ineffective for failing to exclude Erica McKinney's testimony on the ground that she was incompetent to testify (*id.* at 18 (citing Ex. O at 93–109)).  However, in Petitioner's brief on appeal of the state circuit court's denial of his Rule 3.850 motion, Petitioner did not specifically argue error with respect to lower court's denial of this claim; instead, he simply stated,

**(5) Remaining claims that were summarily denied by the postconviction court.**

>        For the remaining claims (Claims 2, 3, 4, 6, and 8), Appellant Daniels
> continues to rely upon the arguments contained in his postconviction motion.  *See*
> Fla. R. App. P. 9.141(b)(2)(C) (stating that appellate briefs are not required when a
> postconviction court summarily denies a postconviction claim); *Webb v. State*, 757
> So. 2d 608, 609 (Fla. 5th DCA 2000) (rejecting the State's argument that summarily-
> denied claim was waived on appeal when the defendant, in his appellate brief, merely
> referred to the claim raised in the postconviction motion rather than pleading the
> claim in the brief).

(*id.* (citing Ex. FF at 50)).  Respondent contends Petitioner misstated Rule 9.141(b)(2)(C) as stating

that briefs are not required when a court summarily denies a postconviction <u>claim</u>, because the rule

actually states that when a <u>motion</u> for post-conviction relief is denied without an evidentiary hearing,

no briefs are required (doc. 19 at 19). Respondent contends Petitioner's failure to brief the issue

waived appellate review and constitutes a procedural default for federal habeas purposes (*id.* at

18–20).  Respondent additionally contends, notwithstanding the procedural bar, Petitioner is not

entitled to federal habeas relief (*id.* at 20–21).

    For the reasons discussed in Ground Two, *supra*, the undersigned concludes that Ground

Five was not properly exhausted in the state courts, because Petitioner waived post-conviction

appellate review of the claim by failing to present any argument or providing only conclusory

argument (*see* Ex. O at 93–109; Ex. FF at 50).  Additionally, Petitioner has no available avenue

through which he may properly exhaust his claim in the state courts.  Therefore, the claim is

considered procedurally defaulted.  Moreover, Petitioner has failed to show cause for his failure to

properly exhaust this claim; and he has not shown he is entitled to review under any other

recognized exception to the procedural bar.  Therefore, he is not entitled to federal review of Ground

Five.[15]

>    G.    <u>Ground Six:  "The state court decision is an unreasonable application of Strickland</u>
>    <u>v. Washington, 466 U.S. 668 (1984), where counsel failed to move for the disqualification</u>
>    <u>of former Asst. State Attorney David House, whose prosecution of Petitioner was politically</u>
>    <u>motivated."</u>

---

[15] Notwithstanding the procedural default, for the reasons stated in Respondent's answer (*see* doc. 19 at 20–21),
Petitioner has failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable
determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.

Petitioner contends he told defense counsel that the prosecutor, Mr. David House, had personal differences with Petitioner's mother and was abusing his public office to exact vengeance on her by prosecuting Petitioner (doc. 11 at 23–26). Petitioner states the nature of Mr. House's conflict was the fact that Petitioner's mother supported Mr. House's opponent when he ran for county judge (*id.*). Petitioner contends if defense counsel had moved to disqualify the prosecutor, there is a reasonable probability of a different outcome, because most prosecutors would not have proceeded to trial with "such a weak case" (*id.* at 25). Further, most prosecutors would not have opted to seek habitualization of an offender in such cases (*id.*). Petitioner states he raised this claim as Ground Six in his Rule 3.850 motion (*id.* at 23).

Respondent asserts the same waiver/procedural default argument asserted in Ground Five, *supra* (doc. 19 at 21). Respondent additionally contends, notwithstanding the procedural bar, Petitioner is not entitled to federal habeas relief (*id.* at 21–24).

For the reasons discussed in Grounds Two and Five, *supra*, the undersigned concludes that Ground Six was not properly exhausted in the state courts, because Petitioner waived post-conviction appellate review of the claim by failing to present any argument or providing only conclusory argument (*see* Ex. P at 361–74; Ex. FF at 50). Additionally, Petitioner has no available avenue through which he may properly exhaust his claim in the state courts. Therefore, the claim is considered procedurally defaulted. Moreover, Petitioner has failed to show cause for his failure to properly exhaust this claim; and he has not shown he is entitled to review under any other recognized exception to the procedural bar. Therefore, he is not entitled to federal review of Ground Six.[16]

> ### H.      Ground Seven: "The state court decision is an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), where counsel failed to elicit exculpatory testimony from defense witness Jean Murphy, which she was called to testify of [sic]."

Petitioner contends defense counsel was ineffective for failing to elicit "alibi testimony" from Jean Murphy, Petitioner's mother, that she saw something with handles sticking out of Nellie Mayo's trunk when Ms. Mayo picked up Petitioner at Ms. Murphy's house (doc. 11 at 26–29).

---

[16] Notwithstanding the procedural default, for the reasons stated in Respondent's answer (*see* doc. 19 at 21–24), Petitioner has failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.

Petitioner states Ms. Murphy testified during her deposition that she saw something with handles sticking out of the trunk (*id.* at 26–27). He concedes counsel asked Ms. Murphy at trial whether she noticed if there was anything in Nellie Mayo's car, but counsel interrupted Ms. Murphy's answer with another question and failed to elicit the favorable testimony (*id.* at 27–28). Petitioner argues he was prejudiced by counsel's error, because this testimony would have shown he did not steal the tiller (*id.* at 28). He states he raised this as Ground Seven in his Rule 3.850 motion (*id.* at 26). He argues the state circuit court failed to adjudicate the merits of the claim, as evidenced by the fact that it made no mention of this claim in its written decision (*id.* at 29). He therefore contends he is entitled to de novo review by this court (*id.*).

Respondent argues Petitioner never presented this claim in his Rule 3.850 motion (doc. 19 at 24–26). Respondent states the only issue raised in Ground Seven of Petitioner's Rule 3.850 motion was defense counsel's failure to request an alibi jury instruction, not counsel's failure to elicit exculpatory testimony from Ms. Murphy (*id.*). Therefore, the claim was not exhausted and is procedurally barred from federal review (*id.*). Respondent additionally argues, notwithstanding the failure to exhaust, the state court's adjudication of Ground Seven was based upon a reasonable determination of the facts, in light of defense counsel's testimony at the evidentiary hearing, and was a reasonable application of <u>Strickland</u> (*id.* at 26).

The state court record demonstrates that in Ground Seven of Petitioner's Rule 3.850 motion, he argued defense counsel was ineffective for failing to present an alibi defense and request an alibi jury instruction (Ex. Q at 393–412). Petitioner argued counsel should have elicited testimony from his mother, Jean Murphy, that she saw something with handles sticking out of Nellie Mayo's trunk when Mayo picked up Petitioner on the night the tiller was stolen and sold (*id.*). Petitioner argued this would have established he was not present when the tiller was stolen (*id.*). The state court held an evidentiary hearing on this claim, and Petitioner's trial counsel offered testimony on this issue (*see* Ex. U at 1049, 1051; Ex. W at 5–6, 89–90). Attorney Dingus testified as follows with regard to the alibi defense and jury instruction:

> Q [by the State]: Can you explain to the Court why you didn't ask for the alibi instruction, because, obviously, you had his mother testifies [sic] in the March trial, is that correct?

A.      That's correct.

Q.      What was the purpose of putting her on the stand?

A.      We wanted to try to establish that at a point in time near abouts [sic] to when Mr. Lee's rototiller was taken, that Mr. Daniels was in bed asleep because this was in the middle of the night, if memory serves correctly.  Typically you have to file a notice of alibi.  I was a little bit leery about doing that because the exact time I could get Ms. Murphy to commit to on exactly when Mr. Daniels was home, when she saw him there, when she could actually verify, he was between [sic] this time and this time.

I didn't get that level of information for [sic] her on that.  Either in talking to her, in the deposition with David House, and you can see that in her trial testimony as well.  In terms of the alibi issue and you have to also factor in we had all these phantom witnesses that I couldn't locate, . . . the one witness that we had that was in the ballpark was his mom and she wasn't that helpful, but I agreed to his [Petitioner's] wishes and called her as a defense witness. Now, regarding the alibi instruction, as a trial lawyer, you have to weigh whether you want the judge to instruct on something that's maybe not so good and highlight it for the state to pound it down your mouth in closing.

Q.      Especially since you had given up opening and closing in that situation?

A.      Exactly.

Q.      If I understand you correctly, your alibi witness wasn't that great.  I know they teach us in law school and at these seminars to argue strong points, don't try to counter the weakness that the other people put out.  You didn't want to highlight a weakness that you had that your alibi really wasn't that good of an alibi by having an instruction on it, is that correct?

A.      Absolutely and that's something I considered, in all fairness.  I considered having the judge instruct on that, but I opted not to do it for that very reason.
. . . .

Q.      Let's talk about—I want to touch back on the alibi part for a minute.  We heard testimony from Mr. Daniels that the alibi was important because it alibied him out of the grand theft, which leads into this issue that he should have been instructed on both, and they said I didn't do the grand theft and they couldn't prove the knowledge that I had of the stolen property.  Tell us about the evidence that was presented against him strictly on the dealing in stolen property by the state and how that [i.e., Petitioner's theory that if he was "alibied" out of the grand theft, the State

could not prove he had knowledge that the tiller was stolen] and how that really
doesn't hold water?

. . . .

A.    . . . I thought, okay, well, this issue about whether or not the grand
theft is committed, it's important, but we also have to deal with this issue about
somebody saying there's a rototiller being sold under certain curious
circumstance[s], out of the back of a car, at an odd time of night, by two people that
were, quite frankly, given all the things that were described in the discovery was, sort
of sinister.

And there's a [sic] inference that can be drawn about possession of recently
stolen property and an alarm bell went off in my head and I thought, we need to find
some way around that if we're going to effectively defendant [sic] this.  Now given
what we had the [sic] and the lack of alibi witnesses, the best thing to do is to
present, I thought, was just to present a generalize [sic] lack of the evidence defense.

. . . the important thing I wanted to note here when we had to make a decision
to go to trial on this case, after we had the mistrials, I thought it was important we
go to trial then because we didn't have a whole lot of evidence.  In the mean time
[sic], the state found this Erica McKinney [who testified she gave Scott Daniels a
ride to Ralph Lee's house and picked up the tiller, but then drove off and left Daniels
with the tiller], who sort of tied the case up for them.

. . . .

A.    . . . After we had this mistrial, after Mr. Daniels told me he wanted his
mother called as a witness, the state was able to go out and secure this witness
testimony [Ms. McKinney's] that linked them up [the grant theft and the dealing in
stolen property].

. . . .

A.    . . . In sizing up the alibi defense, I have to consider what my client
is telling me as well.  In going over his version of what happened was never [sic], I
didn't do it.  It was never, they can't prove this against me, I wasn't there.  It always
related to they don't have the evidence.

(Ex. W at 73–82).

On cross-examination, Attorney Dingus addressed the issue of why he did not ask Jean

Murphy a direct question about seeing handles sticking out of Nellie Mayo's trunk:

Q [by Petitioner's post-conviction counsel].  My understanding from reading
the transcript and from listening to your testimony and from listening to Mr. Daniels'
testimony, was that Scott's mother, at deposition, testified that she saw some handles
sticking out of the trunk of the car that picked up Scott and that the trunk wasn't
closed fully.  Does that sound accurate to the way you remember her testimony at

deposition, or, I guess, maybe the way the deposition reflected because you didn't actually take that deposition?

A.      Davis House took that deposition.  I was there and I had the second series of questions after Mr. House had it.  Mr. House may have asked those questions.  In fairness, I don't remember if I did, nor do I remember if he did.

Q.      Do you remember prior to trial that being one of the things you wanted to get out of her testimony being—

A.      Sure.

Q.      It's also important because Mr. Bozeman testified to the same thing that there was a tiller in the back of the car, the trunk was halfway shut and the handles were actually sticking out of the trunk of the car [Mr. Bozeman's actual testimony was that the trunk was raised and he saw the tiller (Ex. B at 62)], do you remember that testimony?

A.      I did, but you have to also balance that against the problem that it wasn't in dispute that he was the seller of the tiller.

Q.      I understand.  My question is, when you read the transcript, the testimony of Ms. Murphy, it's apparent that you asked some question, and she never said what she said in deposition, about these handles sticking out of the trunk of the car, the trunk was partially open.  She didn't say that in trial even though she had said it in deposition.

A.      Right.

Q.      My question is, why didn't you make a more concentrated effort to get her to say what she had said in deposition by asking her a direct question about that issue?

A.      You have to also understand that at the time there was a trial, there [sic] witness Erica McKinney laid down a pretty good time line about exactly when that theft occurred.  So the bigger factual issue we had to confront was accounting for his whereabouts at that time.  The only person we had to account for that, other than Mr. Daniels, wo [sic] didn't testify, was his mother.  And she wasn't very helpful on that point, not because she didn't want to help her son, she just didn't come across as a good witness.

Q.      The question, and I may not have been clear when I asked it.  She had certain evidence you obviously wanted to get in, based upon her deposition, but she

wasn't asked a direction [sic] question about was there anything in the back of the
car.  What was the rational [sic] for not asking that question?

      A.     As a matter of strategy, I thought it was more important at the time
to account for the time line and his whereabouts.  I guess that's my answer to that.

(*id.* at 88–90).

      The state circuit court found that although Petitioner claimed that his mother's testimony
would have established an alibi defense to the <u>theft</u> charge, it was undisputed that Petitioner sold the
tiller to Mr. Bozeman, and Petitioner had no alibi defense to the <u>dealing in stolen property</u> charge,
which is the only charge for which Petitioner was adjudicated guilty and sentenced (Ex. U at 1051)
(emphasis added).  The court further found as fact that Mr. Dingus made a tactical decision not to
highlight the alibi theory, because Petitioner's mother, the only "alibi" witness, was a weak witness
for the defense (*id.*).  The court concluded Petitioner failed to demonstrate deficient performance
by counsel or prejudice (*id.*).

      Petitioner fully briefed Ground Seven on appeal, arguing the lower court erred by concluding
counsel was not ineffective for failing to effectively present testimony from Petitioner's mother that
she saw handles sticking out of Nellie Mayo's trunk and failing to request an alibi jury instruction
(Ex. FF at 18, 21–26).  The First DCA affirmed per curiam without written opinion.

      First, with regard to Respondent's exhaustion argument, Respondent makes a good argument
that a claim of counsel's failure to elicit testimony from an "alibi" witness, which is the claim
Petitioner presents in his federal petition, is not the same as a claim of counsel's failure to request
an alibi jury instruction.  However, because Petitioner also argued in state court that counsel failed
to present an alibi defense by eliciting certain testimony from the "alibi" witness, the undersigned
concludes Petitioner satisfied the exhaustion prerequisite for federal habeas review.

      Second, with regard to Petitioner's argument that the state court did not adjudicate the claim
on the merits, the state court's analysis of the claim demonstrates that the court did not view defense
counsel's failure to present an alibi defense and request an alibi instruction as deficient or
prejudicial.  Therefore, the state court adjudicated the merits of the instant claim.  Accordingly, the
state court's decision is entitled to deference under the AEDPA, unless Petitioner satisfies
§ 2254(d)(1) or (2).

The court's factual findings are well supported by the trial transcript and the transcript of the evidentiary hearing.  Therefore, Petitioner has not shown that the state court's decision was based upon an unreasonable determination of the facts under § 2254(d)(2).  Additionally, in light of Erica McKinney's testimony, which connected the theft of the tiller to Petitioner's selling it to Dick Bozeman, and Nellie Mayo's testimony that she had never been to Petitioner's mother's house, both of whom the jury found credible, there is no reasonable probability of a different outcome even if Petitioner's mother had testified she saw handles sticking out of Nellie Mayo's trunk.  Therefore, Petitioner failed to show that the state court's denial of the claim was an unreasonable application of <u>Strickland</u>.

I.      <u>Ground Eight: "The state court decision is an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), where counsel failed to invoke Petitioner's right to speedy trial upon Petitioner's demand."</u>

Petitioner asserts his speedy trial period began on July 7, 2000, upon his arrest (doc. 11 at 30).  He states under Florida law, he had a right to a trial within 175 days of his arrest, or by December 29, 2000 (*id.*).  Petitioner asserts he notified defense counsel of his desire to have a speedy trial in November of 2000 (*id.*).  He states if counsel had filed a notice of expiration of speedy trial time on the 176th day, the State would have been required to try him by January 13, 2001 (*id.*). Instead, his first trial began on January 29, 2001 (*id.*).  That trial ended in a mistrial, and his second trial began the next day, on January 30, 2001 (*id.*).  That trial also ended in a mistrial, and this third trial began on March 20, 2001 (*id.*). Petitioner contends counsel failed to enforce his right to a speedy trial under Florida law and the federal Constitution (*id.*).  He argues he was prejudiced by counsel's failure to assert his speedy trial rights, because the State located Erica McKinney, a key witness, just seven days before his third trial (*id.* at 31).  Petitioner states he raised this issue in Ground Twelve of his Rule 3.850 motion (*id.* at 29).

Respondent contends the state court's denial of this claim was based upon its determination that Petitioner was brought to trial within the time set forth in Rule 3.191(b)(2) of the Florida Rules of Criminal Procedural (doc. 19 at 28–29).  Respondent contends this finding is binding upon the federal court; and in light of this finding, Petitioner failed to show either deficient performance or prejudice under <u>Strickland</u> (*id.* at 29–30).

1.      Clearly Established Federal Law

The clearly established standard for evaluating claims of ineffective assistance of counsel is the <u>Strickland</u> standard set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Twelve in his Rule 3.850 motion (Ex. Q at 580–82). In his motion, he conceded that Attorney Dingus was not appointed to represent him until November 17, 2000 (*see* Ex. at 580).

At the post-conviction evidentiary hearing, Mr. Dingus testified that when he met with Petitioner after his appointment to the case, Petitioner told him he wanted a trial as quickly as possible and also that he wanted Dingus to look for witnesses (Ex. W at 65–66).  Dingus testified that under Florida's speedy trial rule, when counsel for a defendant files a demand for speedy trial or notice of expiration of speedy trial, counsel is certifying to the trial court that he is ready for trial within five days (*id.* at 66).  Dingus testified he told Petitioner he was new to the case and needed time to review the transcripts of depositions that had been taken by Petitioner's former counsel, so he was not prepared to file a demand for speedy trial (*id.* at 65–66).  Mr. Dingus testified he told Petitioner during a meeting at the jail, and he told Petitioner and his mother during a telephone conversation, that he needed addresses and telephone numbers of the witnesses so he could disclose them to the State and subpoena them (*id.* at 67).  Dingus testified, "It seemed to me at that point that things weren't going anywhere and the next thing I knew, I was served with a motion to relieve myself as his counsel on his cases, and a typed motion invoking his right to represent himself and a self-typed speedy trial—invoking a speedy trial rights type of pleading." (*id.* at 67–68).  Mr. Dingus testified that a hearing was held on January 17, 2001, on Petitioner's motion to discharge counsel and represent himself (*id.* at 68).  Dingus testified the trial court granted Petitioner's motion to represent himself but maintained Dingus as "standby" counsel (*id.* at 68–69).  Dingus testified the court granted the prosecutor's motion to strike Petitioner's notice of expiration of speedy trial time as improperly filed, but the court set the matter for trial on January 29, 2001 (*id.* at 69–70).  Dingus testified that on the trial date, January 29, Petitioner stated he no longer wished to represent himself, so Dingus was re-appointed (*id.* at 70).  Mr. Dingus testified the trial court declared a mistrial on January 29, and a new jury was selected the same day to proceed to trial the next day,

January 30 (*id.* at 71).  Dingus testified that after the jury was selected, Petitioner demanded that Dingus present Petitioner's mother as a trial witness (*id.* at 71–72).  Dingus disclosed the defense witness at trial the next day, which resulted in a mistrial (*id.*).  Dingus testified the third trial was March 20, 2001, which was within the 90-day period following a mistrial, provided in Florida's speedy trial rule (*id.* at 70–71).

Facts relevant to this issue are also included in the record of the January 17, 2001, hearing referenced by Mr. Dingus (Ex. Q at 584–604).  At that hearing, Mr. Dingus advised the court that he had not received transcripts of the ten depositions taken by Petitioner's previous counsel until January 16, 2001 (*id.* at 591, 595).  Mr. Dingus told the court that upon reading the transcripts, he would need to request a continuance if he remained on the case, in order to retake Nellie Mayo's deposition (*id.* at 591–92).  Mr. Dingus also stated that as an officer of the court, he could not file a notice of expiration of speedy trial without investigating whether Petitioner had waived his right to a speedy trial prior to his (Dingus's) appointment to the case (*id.* at 592).

Following the post-conviction evidentiary hearing, the state circuit court determined Petitioner was not prejudiced by Mr. Dingus's failure to file a Notice of Demand for Speedy Trial, because Petitioner's first and second trials commenced within the time frame set forth in Rule 3.191(b)(2) of the Florida Rules of Criminal Procedure (Ex. U at 1053).  The court additionally determined that Petitioner's third trial commenced within the 90-day period required under Rule 3.191(m) (*id.*).  The court additionally determined:

> . . . Defendant's counsel was not ineffective for failing to file a Notice of Speedy trial [sic] for the following reasons.  First and foremost, counsel testified at the evidentiary hearing that he could not be effective if he filed such a motion.  More specifically, counsel stated that he was still reviewing the case and there were more witnesses to be deposed when he was appointed [on] the case due to conflict in November 2000.  In fact, the Defendant wanted his mother deposed by counsel so that she may testify before the third trial was to commence, which counsel did.  Second, counsel stated that the Defendant was a major cause of the delay in preparing for trial.  For example, the Defendant wanted other witnesses to be contacted for depositions, when counsel was first appointed.  However, the Defendant and his mother were both unhelpful and vague in their information to allow counsel an opportunity to contact these witnesses.  Lastly, counsel stated he could not give a good faith basis to certify in a motion that he would be ready to commence a trial within 5 days.  After reviewing the record and the testimony

> presented at the hearing, this Court finds that the defense was not prepared enough
> to effectively certify a demand for speedy trial contrary to the Defendant's claims.
> In fact, this Court finds that the Defendant was a major contributing factor to
> discovery of other witnesses, which he requested counsel to perform depositions of
> these witnesses prior to trial.

(*id.*).

Petitioner briefed this issue to the First DCA (Ex. FF at 27–30). The First DCA affirmed without written opinion.

The state circuit court's factual finding that defense counsel was not prepared enough to certify his readiness for trial in five days is supported by the record, including Attorney Dingus's testimony at the pre-trial hearing and the post-conviction evidentiary hearing. Indeed, Petitioner's post-conviction counsel stipulated that Mr. Dingus was not prepared for trial and thus unable to certify his readiness to proceed (Ex. W at 112). In light of this finding that counsel was not ready for trial as of January 17, 2001 (and reasonably so, since he had been appointed only two months prior, had received the deposition transcripts the previous day, and wished to depose at least one witness), it was not unreasonable for counsel to refuse to file a speedy trial demand or notice of expiration prior to January 17, 2001. Additionally, because counsel was discharged from the case on that date, he could not demand a speedy trial on Petitioner's behalf until January 29, 2001, the day he was reappointed. Petitioner's case was set for trial on that date, and a jury was selected, but the court granted Mr. Dingus's motion for mistrial (made at Petitioner's request) and reset trial for the next morning (Ex. S at 899–901). Petitioner's second trial commenced the next morning, and the trial court again declared a mistrial (*id.* at 902–05). Petitioner's third trial commenced forty-nine (49) days later, on March 20, 2001, within the 90-day speedy trial time provided in Rule 3.191(m) of the Florida Rules of Criminal Procedure (Ex. B). Petitioner failed to demonstrate that Mr. Dingus performed unreasonably in failing to assert his speedy trial rights. Therefore, the state court's denial of Petitioner's ineffective assistance of counsel claim was not an unreasonable application of Strickland.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"

and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (doc. 11) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of November 2011.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**